AIRTOUCH PAGING et al., Appellees and Cross–Appellants,

v.

TRACY, Tax Commr., Appellant and Cross–Appellee, et al.

[Cite as *AirTouch Paging v. Tracy* (1996), 111 Ohio App.3d 202.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APE11–1549.

Decided May 23, 1996.

*Bricker & Eckler, Elbert J. Kram, Mark A. Engel* and *Sally W. Bloomfield,* for plaintiffs-appellees and cross-appellants.

*Betty D. Montgomery,* Attorney General, and *James C. Sauer,* Assistant Attorney General, for defendant-appellant and cross-appellee.

TYACK, Judge.

On September 8, 1994, ten plaintiffs, companies involved in the "paging" industry, filed a complaint in the Franklin County Court of Common Pleas, naming as defendant Roger W. Tracy, the Tax Commissioner of Ohio ("commissioner"). The declaratory judgment action arose following receipt by the plaintiffs ("paging companies") of a notice from the commissioner advising them that their property tax filing status had changed.

Specifically, the paging companies were informed that they would no longer be deemed "general taxpayers" for purposes of Ohio personal property taxation, pursuant to R.C. Chapter 5711. Instead, as a result of the Ohio Supreme Court's decision in *MCI Telecommunications Corp. v. Limbach* (1994), 68 Ohio St.3d 195, 625 N.E.2d 597, the commissioner determined that the paging companies should

be reclassified as "interexchange telecommunications companies" ("IXCs"), thus subject to public utility property tax pursuant to R.C. Chapter 5727. Further, the assessment was to be applied retroactively. The importance of the distinction is, essentially, that property taxed under the "public utility" designation is taxed at a significantly greater percentage than a general taxpayer.

The trial court ultimately ruled in favor of the paging companies, holding that the reclassification from general taxpayers to IXCs violated their constitutional right to equal protection under the law because other "similarly situated" paging companies had not been so reclassified.

The commissioner has timely appealed, assigning four errors for our consideration:

"Assignment of Error No. 1:

"The common pleas court acted unreasonably and unlawfully in failing to find that the transmission of tone and voice, numeric and alphanumeric messages as part of the plaintiffs'/appellees' paging services constituted 'transmitting telephonic messages' as that term is used in the definition of 'interexchange telecommunications company' in R.C. 5727.01(H).

"Assignment of Error No. 2:

"The common pleas court erred in failing to find that the classification and assessment of the plaintiffs as interexchange telecommunications companies under R.C. 5727.01(H), based on the PUCO's classification and regulation of such companies as telephone companies under R.C. 4905.03(A)(2), was reasonable and did not deny the plaintiffs their constitutional right to equal protection under the law.

"Assignment of Error No. 3:

"The determination of the common pleas court that the classification of the plaintiffs as interexchange telecommunication companies violated such companies' constitutional right to equal protection was erroneous, because the plaintiffs failed to prove, as a fact, that such classification was an intentional or invidious discrimination that operated to treat them differently than similarly situated taxpayers.

"Assignment of Error No. 4:

"The common pleas court erred in failing to find that R.C. 2721.02 did not authorize an action for declaratory judgment in this case, because there was no justiciable issue, for which the plaintiffs had no adequate administrative remedy."

The paging companies have pursued a cross-appeal, assigning the following six errors:

"1. The trial court failed to declare that each of the Plaintiffs was not an 'interexchange telecommunications company' as the term is defined in Revised Code ('R.C.') 5727.01.

"2. The trial court failed to declare that 'paging' did not constitute the transmission of a telephonic message to, from, through, or in the State of Ohio.

"3. The trial court failed to declare that Defendant Tax Commissioner in making his decision to classify Plaintiffs as interexchange telecommunications companies, unlawfully delegated his responsibilities under R.C. 5703.05 to the Public Utilities Commission of Ohio.

"4. The trial court failed to declare that Defendant Tax Commissioner had no authority to classify Plaintiffs as interexchange telecommunications companies and to assess additional taxes for years closed to assessment by operation of law.

"5. The trial court failed to declare that Defendant Tax Commissioner was estopped from classifying Plaintiffs as interexchange telecommunications companies on a retroactive basis.

"6. The trial court failed to declare that Defendant Tax Commissioner's unlawful actions to classify Plaintiffs as interexchange telecommunications companies, and to assess additional taxes for years that were closed to assessment, denies to Plaintiffs due process of law."

Understanding the current posture of this litigation first requires an education in some fundamental yet critical terminology. The import of the *MCI* case and the issues before us simply cannot be appreciated without such knowledge. Therefore, we begin our discussion with a rudimentary explanation of some relevant terms.

R.C. Chapter 5727 codifies "public utilities" taxation laws. For purposes of taxing public utilities, an IXC is defined as one "that is *engaged in the business of transmitting telephonic messages* to, from, through, or in this state, but that is not a telephone company." (Emphasis added.) R.C. 5727.01(H). R.C. Chapter 4905 sets forth the general powers of the Public Utilities Commission of Ohio ("PUCO"). In virtually identical language, the PUCO defines a "telephone company" as one *"engaged in the business of transmitting telephonic messages to, from, through, or in this state and as such is a common carrier."* (Emphasis added.) R.C. 4905.03(A)(2).

The plaintiffs are all engaged in the provision of paging services, which services include transmitting tone, tone and voice, numeric, and alphanumeric messages. The record reflects that plaintiffs are regulated by the PUCO generally as follows. In order to utilize radio signals, the plaintiffs hold radio common carrier ("RCC") and/or private carrier pager ("PCP") licenses issued by the Federal Communications Commission ("FCC"). The PUCO then issues to licensees such

as plaintiffs "certificates of convenience and necessity"; holders of such certificates are then placed on the PUCO's "maintenance assessment" list.

"Resellers" acquire telephone numbers from paging companies, and then sell or lease pagers to customers. The resellers do not own broadcast transmitters; they utilize plaintiffs' facilities for transmission of messages to the pagers they have leased or sold. Since resellers do not own the transmitters, they are not licensed by the FCC and do not obtain certificates of convenience and necessity from the PUCO; thus, resellers are not on the PUCO's maintenance assessment list.

PCPs hold licenses issued by the FCC; however, by operation of preemptive federal law, PCPs are not registered with the PUCO and, thus, are not on the maintenance assessment list.

We now turn to the Supreme Court of Ohio's *MCI* decision, 68 Ohio St.3d 195, 625 N.E.2d 597, which prompted the commissioner's actions and, in turn, the resulting declaratory judgment action. In *MCI*, the Supreme Court of Ohio found a violation of equal protection where the commissioner treated similarly situated taxpayers in a discriminatory manner. The significance of *MCI* to this case lies in the court's language wherein it admonished the commissioner for "ignoring" the PUCO's construction of the term "telephone company." *Id.* at 200, 625 N.E.2d at 600–601. The equal protection violation was premised upon a finding that the commissioner failed to tax as telephone companies all taxpayers regulated by the PUCO as telephone companies. The court stated:

"[T]he [tax] commissioner argues that resellers, unlike 'telephone companies,' do not own or lease the transmission equipment but merely buy and resell transmission service from companies that own transmission equipment.

"However, [PUCO] treats facility-based carriers and resellers the same. The commissioner's argument ignores the commission's April 9, 1985 order in *In re Regulatory Framework for Telecommunication Serv. in Ohio* (1985), 66 P.U.R.4th 572, No. 84–944–TP–COI, which determined that resellers transmit telephonic messages as a 'telephone company' within the meaning of that term as contained in the Tax Code in the disputed year. * * * Moreover, the commission held that facility-based carriers and resellers are in the same interexchange carrier category, and the commission regulates both in the same manner. The commission requires both to be certified by the commission, and both to set their rates flexibly within the range approved by the commission. The commission applies virtually all other oversight procedures to both carriers.

"*Thus, two taxpayers within the same class owning or leasing the same type of equipment are treated differently, and this treatment denies MCI equal protection of the laws.*" (Emphasis added.) 68 Ohio St.3d at 200, 625 N.E.2d at 601.

As a result of the commissioner's interpretation of the requirements of *MCI*, the commissioner reconsidered his construction of the phrase "transmitting telephonic messages." In so doing, he referred to the PUCO's list of regulated companies on its maintenance assessment list. The commissioner then sent notices of reclassification to those companies on the PUCO's list that had not already been filing as either telephone companies or IXCs. The plaintiff paging companies were on the PUCO's list and, consequently, received notices that they had been reclassified as IXCs.

At trial, plaintiffs contended, and the trial court so found, that equal protection was violated because others in the paging services industry, namely PCPs and resellers of paging services, *not* regulated by the PUCO as telephone companies would not be subject to reclassification and the resulting taxation as a public utility. In its limited factual findings, the trial court found that resellers of paging services "provide the same services as Plaintiffs, i.e., they sell or lease a pager to a customer, assign a telephone number to the pager, and provide the means for the pager to receive a message." The trial court also found that PCPs provide the same services as plaintiffs, operating in the same manner and possessing the same type of assets.

■ We now turn to the commissioner's assignments of error. Because the issue. of subject matter jurisdiction is always potentially dispositive, we first address the commissioner's fourth assignment of error. Specifically, the commissioner contends that the trial court erred in failing to dismiss the paging companies' declaratory judgment action for lack of a justiciable issue.

The commissioner argues that a declaratory judgment action under these circumstances is inappropriate because there is no final, justiciable controversy, and because the availability of an administrative remedy precludes such an action. The "preliminary assessments" challenged by the paging companies were subject to further review pursuant to the administrative procedure established by R.C. Title 57, pursuant to which a petition for reassessment may be brought. The paging companies did indeed avail themselves of this procedure; the record indicates that, at the time of trial, their petitions were pending before the commissioner. The commissioner's final determinations of such petitions are appealable to the Ohio Board of Tax Appeals and ultimately to the Ohio Supreme Court.

The paging companies respond that a declaratory judgment action is proper here because there does exist a justiciable controversy, and because the administrative remedy is inadequate and unduly burdensome because of its extreme time consumption and expense. Further, the paging companies note that the administrative process required them, prior to contesting the commissioner's actions, to file tax returns and pay taxes as public utilities, taxes no less than threefold the

amounts previously paid as general taxpayers. Finally, the paging companies direct us to case law establishing that administrative agencies are not proper forums in which to resolve constitutional issues. In overruling the commissioner's motion to dismiss for lack of subject matter jurisdiction, the trial court emphasized that the crux of the commissioner's action alleged constitutional issues.

In *State ex rel. Columbus S. Power Co. v. Sheward* (1992), 63 Ohio St.3d 78, 585 N.E.2d 380, the Supreme Court of Ohio noted the well-settled rule that an administrative agency is without jurisdiction to determine issues pertaining to constitutionality. See, also, *S.S. Kresge Co. v. Bowers* (1960), 170 Ohio St. 405, 11 O.O.2d 157, 166 N.E.2d 139. Citing *Herrick v. Kosydar* (1975), 44 Ohio St.2d 128, 130, 73 O.O.2d 442, 443, 339 N.E.2d 626, 627–628, the court explained that a declaratory judgment action is a "superior remedy" when alternative administrative proceedings would be " 'futile preludes' to the subsequent assertion of the constitutional claim before the courts." *Columbus S. Power*, 63 Ohio St.3d at 81, 585 N.E.2d at 383. Since the principal claims advanced here by the paging companies were constitutional claims and would have to be deferred by the administrative agency, the trial court did not err in finding that the declaratory judgment action was the proper and more expedient remedy. See, also, *Couchot v. Ohio State Lottery Comm.* (1991), 71 Ohio App.3d 371, 375, 594 N.E.2d 42, 44–45.

The commissioner's fourth assignment of error is overruled.

■ The parties agree that the trial court erred in failing to address the statutory issue requiring construction and application of the term "IXC." The commissioner's first assignment of error contends that the trial court erred in failing to find that the paging companies were "transmitting telephonic messages" and thus lawfully reclassified as IXCs. Conversely, the first and second cross-assignments of error advanced by the paging companies allege error by the trial court in failing to make the opposite finding, *i.e.*, that the paging companies were not "transmitting telephonic messages" and thus were unlawfully reclassified as IXCs. Since these arguments are interrelated, we address them jointly.

The definition of "transmitting telephonic messages" is, of course, critical to resolution of this case. As indicated above, the trial court failed to make any finding whatsoever as to the proper statutory construction of this legal term. The record reflects that the commissioner's construction of "transmitting telephonic messages" for tax purposes historically encompassed a narrower class of telecommunications companies than did the PUCO's construction of virtually identical language for regulatory purposes. A 1976 case from the Ohio Supreme Court supported such a narrow construction. In *Radio Relay Corp. v. Pub. Util.*

*Comm.* (1976), 45 Ohio St.2d 121, 74 O.O.2d 248, 341 N.E.2d 826, the court held at the syllabus:

"1. Where a one-way radio paging service broadcasts a radio signal from its own transmitter to a subscriber's pager, which the subscriber carries in his pocket, causing the pager to emit a beep which alerts the subscriber to make a telephone call, *such signal is not a 'telephonic message'* within the meaning of R.C. 4905.03(A)(2), even though the radio paging service is interconnected to a land-line telephone facility for the sole purpose of transmitting signalling instructions from the telephone company's automatic answering device to the radio paging service's transmitter.

"2. A company engaged in the business of providing such a one-way radio paging service to its subscribers *is not a 'telephone company'* within the meaning of R.C. 4905.03(A)(2), nor is it a 'public utility' within the meaning of R.C. 4905.02." (Emphasis added.)

The paging companies submit that *Radio Relay* is dispositive of this issue and that "transmitting telephonic messages" requires a bidirectional ("two-way") communication with no delay between the communication and the response. Until *MCI,* such a contention would have been convincing.

As indicated above, the commissioner's broader construction of "transmitting telephonic messages" was spurred by the apparent mandate of *MCI.*

Our reading of *MCI,* a *per curiam* opinion with no syllabus, is consonant with the commissioner's interpretation. *MCI* concludes that if the PUCO considers an entity to be a telephone company and thus regulates it as a public utility, the commissioner should treat it the same for tax purposes. The clear implication of the court's language in *MCI* is that the commissioner must reconcile his construction of the term "transmitting telephonic messages" with that of the PUCO.

As noted by the court in *MCI,* PUCO construed "telephone company" and, therefore, "transmitting telephonic messages," in its order in *In re Regulatory Framework for Telecommunication Serv. in Ohio* (1985), 66 P.U.R.4th 572, No. 84–944–TP–COI, as follows:

"*Radio common carriers (RCCs) provide* * * * such services as *one-way tone and voice paging,* two-way tone and voice paging, display paging * * * and *are telephone companies and public utilities* * * *." (Emphasis added.)

The *MCI* court required the tax commissioner to recognize and harmonize the language of this PUCO order with the commissioner's definition of "transmitting telephonic messages."

As the commissioner notes, this conclusion is bolstered by a recent Ohio Supreme Court case in which the court expressly looked to the PUCO's construc-

tion of a term to define and apply the identical term in a tax statute. *Chrysler Corp. v. Tracy* (1995), 73 Ohio St.3d 26, 28, 652 N.E.2d 185, 186–187.

We find the facts of this case to be readily distinguishable from those in *Radio Relay*. In *Radio Relay*, the court was confronted with pre–1976 technology; paragraph one of the syllabus specifically noted that the technology at issue involved a pager emitting only a "beep" or "tone." As indicated in the PUCO's order, the paging systems of today involve far more than a mere "beep." The significance and applicability of *Radio Relay*, in our opinion, have been left behind by modern technology. Applying *Radio Relay* in the manner espoused by the paging companies would render the rationale of *MCI* virtually meaningless.

The trial court erred in failing to find that, pursuant to *MCI*, the paging companies are engaged in "transmitting telephonic messages" and, therefore, are properly classified as IXCs.

Having held that the trial court erred in failing to find that the paging companies were engaged in "transmitting telephonic messages" and thus properly classified as IXCs, we sustain the commissioner's first assignment of error. For the same reasons, we overrule the paging companies' first and second assignments of error.

■ The commissioner's second and third assignments of error attack the trial court's conclusion that the reclassification of these paging companies, as opposed to others "similarly situated," as IXCs violated equal protection. Similarly, the commissioner challenges the trial court's determination that the reclassification amounted to intentional, invidious discrimination. Conversely, the paging companies respond that, even if they were properly reclassified as IXCs, they were denied equal protection by the commissioner's failure to reclassify similarly situated providers of paging services. As indicated above, the trial court agreed with the paging companies. We do not.

Successfully challenging a tax classification on equal protection grounds is, to say the least, a burdensome endeavor. "[T]he challenger to the validity of the statute must negate every conceivable basis which might support it." *Lyons v. Limbach* (1988), 40 Ohio St.3d 92, 94, 532 N.E.2d 106, 109, citing *Madden v. Kentucky* (1940), 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590, 593. See, also, *Bank One Dayton, N.A. v. Limbach* (1990), 50 Ohio St.3d 163, 170, 553 N.E.2d 624, 630–631. In *MCI*, the court explained the extremely deferential "rational basis" standard to be applied in determining the validity of such classifications:

"' * * * The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 [40 S.Ct. 560, 561, 64 L.Ed. 989, 990–991] (1920).

" 'As a general rule, *"legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality."* McGowan v. Maryland, 366 U.S. 420, 425–426 [81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399] (1961). Accordingly, this Court's cases are clear that, unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, *the Equal Protection Clause requires only that the classification rationally further a legitimate state interest.'* " (Emphasis added.) *MCI,* 68 Ohio St.3d at 198–199, 625 N.E.2d at 600, quoting *Nordlinger v. Hahn* (1992), 505 U.S. 1, 10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1, 12.

The trial court, as did the *MCI* court, recognized that states have the power to divide different kinds of property into classes and to assign a different tax burden to each class "so long as those divisions and classifications are neither arbitrary nor capricious." *MCI* at 199, 625 N.E.2d at 600, citing *Allegheny Pittsburgh Coal Co. v. Webster Cty.* (1989), 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688. However, the trial court relied upon language in *MCI* noting that unlawful discrimination may occur when a state tax law is applied in such a manner that results in "an unreasonable disparity in assessed value between the taxpayer's property and similarly situated property." *Id.* at 199, 625 N.E.2d at 600.

Our review of the record does not support the trial court's finding that the paging companies overcame the presumption of constitutionality. The commissioner's reclassification of the PUCO-regulated companies as IXCs for tax purposes was a direct result of the *MCI* case; reclassification was a reasonable and rational attempt to comply with the *MCI* mandate.

Further, the record demonstrates that the reclassification rationally furthered a legitimate state interest, namely administrative efficiency. The commissioner's reliance upon the PUCO's assessment list was a reasonable, efficient, and fair method of complying with *MCI.* The record supports a conclusion that expanding the reclassification to include unregulated companies such as resellers and PCPs would have been inefficient at best, and perhaps even impossible. Not only are such unregulated companies not on the PUCO's list, tax department administrators were not even aware of their existence prior to the filing of this action. The record does not support a finding that the reclassification amounted to intentional, invidious, or arbitrary discrimination.

The commissioner's second and third assignments of error are sustained.

The paging companies' third cross-assignment of error claims error by the trial court in its failure to find that the commissioner, in deciding to reclassify the paging companies as IXCs, unlawfully delegated to the PUCO his responsibilities under R.C. 5703.05. We disagree. As the above discussion indicates, our

reading of *MCI* is that the Ohio Supreme Court *mandated* the commissioner to act precisely as he did.  *Chrysler Corp., supra,* 73 Ohio St.3d 26, 652 N.E.2d 185, lends further support to the commissioner's actions in his reasonable attempt to comply with *MCI* by referring to the PUCO's definition to provide meaning for the same term.

The third cross-assignment of error is overruled.

The fourth, fifth and sixth cross-assignments of error raise issues related to the commissioner's attempt to assess public utility taxes retroactively.  The trial court did not address the retroactivity issues, and the state of the record before us is not clear as to the status of the commissioner's current position.  Counsel for the commissioner has made express representations that the commissioner withdrew his request for taxes purportedly due retroactively.  Under the circumstances, we find it appropriate to remand these issues for clarification and resolution by the trial court.  Because of the ambiguity in the record and because we do not wish to establish the law of the case based on the current record, we treat these three cross-assignments of error as moot.

In summary, we sustain the commissioner's first, second and third assignments of error, and overrule his fourth assignment of error.  The paging companies' first three cross-assignments of error are also overruled.  The last three cross-assignments of error filed on behalf of the paging companies are treated as moot.

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

CLOSE and GREY, JJ., concur.

LAWRENCE GREY, J., retired, of the Fourth Appellate District, sitting by assignment.