## SOUTHWESTERN BELL MOBILE SYSTEMS, INC., *et al. v.* ARKANSAS PUBLIC SERVICE COMMISSION

CA 00-407 40 S.W.3d 838

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered April 4, 2001

*Catlett, Yancey & Stodola, PLC*, by: *Mark A. Stodola* and *Christian C. Michaels*, for appellant Southwestern Bell Mobile Systems, Inc.

*H. Edward Skinner*, for appellant Sprint Spectrum L.P.

*Lee McCullough*, for appellee.

LARRY D. VAUGHT, Judge. This appeal presents the question of whether the Tax Division of the Arkansas Public Service Commission has the authority to assess the property of appellants for *ad valorem* tax purposes. It also presents the question of whether the Tax Division's assessment of appellants' property violated appellants' right to equal protection. The Commission and the trial court determined that the Tax Division had the authority to assess appellants' property and that no constitutional violation occurred. We agree. and affirm.

Appellants are Pine Bluff Cellular, Inc., Pinnacle Cellular Limited Partnership, Sprint Spectrum, L.P., and Southwestern Bell Mobile Systems, Inc. These companies are commercial mobile radio service (CMRS) providers. They provide what the public would commonly refer to as cellular telephone service. The Tax Division of the Public Service Commission was created in 1959 for, among other purposes, assessing the value of property owned by public utilities, including telephone companies. In July 1997, the Tax Division sent appellants notice of their *ad valorem* tax assessments. Appellants filed petitions with the Commission challenging the Division's authority to assess their property on the ground that they were not "telephone companies" as defined by the tax assessment statutes. They also protested that section 11(g) of Act 77 of 1997, known as the Telecommunications Regulatory Reform Act, terminated the Commission's regulatory power over CMRS providers, thereby terminating the Tax Division's corresponding assessment power. Finally, appellants claimed that the Tax Division's assessment of CMRS providers' property without assessing the property of similarly situated competitors such as paging companies violated appellants' right to equal protection. The Commission ruled in favor of its Tax Division, and that ruling was affirmed on appeal to Pulaski County Circuit Court. This appeal follows.

Appellants begin their first argument by pointing out that CMRS providers have been virtually deregulated and are no longer

subject to the jurisdiction of the Commission. They cite the afore-mentioned section 11(g) of Act 77 of 1997, now codified at Arkan-sas Code Annotated section 23-17-411(g) (Supp. 1999). Section 11(g) reads as follows:

> The commission, except as provided in this subchapter with respect to universal services, shall have no jurisdiction to regulate commer-cial mobile services or commercial mobile service providers.

The "universal services" language in the statute refers to the obliga-tion of all telecommunications providers to contribute to the Arkansas Universal Services Fund. *See* Ark. Code Ann. § 23-17-404(b) (Supp. 1999).

In 1998, we interpreted section 11(g) to say that, except as specifically set forth in Act 77, the Commission's "traditional regu-latory authority" over commercial mobile service providers has been terminated. *See Alltel Mobile Communications, Inc. v. Arkansas Public Serv. Comm'n*, 63 Ark. App. 197, 975 S.W.2d 884 (1998). Following our ruling in that case, the Commission entered an order in another docket stating that, with the exception of universal services funding, "commercial mobile service providers are not subject to any regulatory authority or jurisdiction of the Commis-sion," and "no other statutes, rules, or regulations jurisdictional to the Commission shall be applicable to cellular mobile service prov-iders." *See* Order No. 14 in Docket No. 97-041-R.

In light of this deregulation of CMRS providers, appellants argue that the Commission is no longer vested with the power to assess the property of CMRS providers. Appellants do not contend that the power to assess is included in the power to regulate; rather, they contend that these two powers must be exercised in a symmet-rical manner. If the Commission is permitted to assess the property of CMRS providers when it is not permitted to regulate them, they claim, this symmetry is broken. To support their argument, appel-lants point to the fact that the Tax Division's assessment power is restricted to public carriers and utilities, the very entities regulated by the Commission. *See* Ark. Code Ann. § 26-24-101(1)(A) (Repl. 1997); Ark. Code Ann. § 26-26-1602(b)(1) (Repl. 1997).

■■ Despite the fact that the Commission has both regula-tory and assessment power over utilities, we disagree that these dual powers may only be exercised in a parallel fashion. First, neither the regulatory statutes contained in Title 23 nor the tax statutes con-tained in Title 26 contain an express mandate that assessment

authority be exercised only when regulatory authority is present. Secondly, the statutory scheme that gives the Tax Division its assessment authority belies a legislative intention that a link must exist between regulatory and assessment powers. The Commission's assessment authority is part of an independent, freestanding grant of power that not only vests the Tax Division with the mandate to assess the property of public utilities and carriers, but with a broad range of assessment responsibilities unrelated to public utilities and carriers. *See, e.g.,* Arkansas Code Annotated section 26-24-102 (Supp. 1999), giving the Division supervision and control over the valuation, equalization, and assessment of property and over the several county assessors, boards of review and equalization; and Arkansas Code Annotated section 26-26-701 (Repl. 1997), requiring the Commission to prepare the forms used by county assessors in performing their duties. Thus, it does not appear that the legislature envisioned that the Tax Division would exercise its assessment authority only where the Commission exercised its regulatory authority. We are not convinced, therefore, that the Commission's assessment power is extinguished in the absence of concurrent regulatory power.

■ As further support for their argument, appellants cite several cases from other jurisdictions in which the courts held that a public utility commission should treat a company the same way for regulatory and assessment purposes. *See In re United Teleservs., Inc.,* 267 Kan. 570, 983 P.2d 250 (1999); *In re Topeka SMSA Ltd. Partnership,* 260 Kan. 154, 917 P.2d 827 (1996); *MCI Telecomm. Corp. v. Limbach,* 68 Ohio St. 3d 195, 625 N.E.2d 597 (1994), *cert. denied,* 513 U.S. 818 (1994); *Airtouch Paging v. Tracy,* 111 Ohio App. 3d 202, 675 N.E.2d 1305 (1996). Of particular interest to us is the *Topeka SMSA* case, which is strikingly similar to the case before us. We will discuss that case further in relation to the next issue on appeal. However, to the extent that these cases may be read to support appellants' argument regarding the symmetry of regulatory and assessment authority, and they would have to be read very broadly to do so, we disagree with their holdings. The fact remains that there is nothing either express or implied in our statutes that the legislature intended the Commission's assessment power to be exercised only over those entities regulated by the Commission.

Our holding in *Alltel Mobile Communications, Inc., supra,* and the Commission's Order No. 14 issued in response, do not change our decision. By its own terms, our opinion in *Alltel* refers to the fact that the Commission has been divested of "traditional regulatory authority" over CMRS providers. As we have already discussed, the

Commission's assessment power stands separate and apart from its regulatory power.

Appellants argue next that they are not "telephone companies" or any other type of utility subject to the Commission's assessment authority. The Commission's Tax Division has the exclusive power to assess the property of, among other entities, "telephone ... or other similar companies...." *See* Ark. Code Ann. § 26-24-103 (Repl. 1997); Ark. Code Ann. § 26-26-1602(b)(1) (Repl. 1997). Telephone companies are in turn defined as companies that transmit for hire within, into, from, or through this state, telephonic messages. *See* Ark. Code Ann. § 26-26-1601(13) (Repl. 1997). The term "telephonic messages" is not defined in these statutes. Appellants claim that they are distinguishable from telephone companies in several ways, among them: 1) they are licensed by the FCC as commercial radio service providers; 2) communications initiated or terminated by appellants' customers are initiated or terminated by means of radio signals using radio facilities, including antennae, transmitters and handsets, and radio technology; and 3) appellants do not own or operate any telephone lines. In support of their argument, they cite *In re Topeka SMSA Ltd. Partnership*, the Kansas case mentioned earlier in this opinion. There, the Kansas court determined that a CMRS provider was not a telephone company transmitting telephonic messages.

■■ Our resolution of this issue requires us to interpret the statutory terms "telephone company," "other similar companies," and "telephonic messages." The basic rule of statutory construction is to give effect to the intent of the legislature. *Central & Southern Cos. v. Weiss*, 339 Ark. 76, 3 S.W.3d 294 (1999). When the language of a statute is plain and unambiguous, legislative intent is determined from the ordinary meaning of the language used. *Id.* In considering the meaning of a statute it is construed just as it reads, giving words their ordinary and usually accepted meaning in common language.[1] *Id.* As we consider the ordinary and common meaning of the terms to be interpreted in this case, we must

---

[1] Appellants urge us to apply certain special rules of statutory construction used in interpreting tax statutes, *e.g.*, when the meaning of a tax statute is doubtful, its meaning should be resolved in favor of the taxpayer, and a tax should not be imposed except by express words indicating that purpose. *See Leathers v. Active Realty, Inc.*, 317 Ark. 214, 876 S.W.2d 583 (1994). We decline to apply these rules of construction because the meaning of the statutory language is clear in this case. Additionally, it has been recognized that statutes establishing procedures for assessment of taxes will be construed in favor of the government. *See Ragland v. Alpha Aviation, Inc.*, 285 Ark. 182, 686 S.W.2d 391 (1985).

disagree with appellants and with the *Topeka SMSA* case because it is clear to us that appellants are telephone companies that transmit telephonic messages. Appellants use their assets to provide a service whereby persons who are at some distance from each other may communicate by voice in real time. During many of their customers' transmissions, the customers are interconnected with the public switched telephone network. The handsets used by these customers have the look and function of wire-based telephones. To establish communications, customers dial a number just as they do when using a wire-based telephone. They may also establish communication directly with a wire-based telephone. As the Court of Appeals of Kentucky recognized in addressing this argument, "[t]he only thing that significantly sets cellular telephone companies apart from traditional telephone companies seems to be the technology involved. The means to the end may have changed, but the end remains the same, that is, cellular phone companies are designed and operated to provide telephone service." *Central Kentucky Cellular Tel. Co. v. Commonwealth of Kentucky*, 897 S.W.2d 601, 603 (Ky. App. 1995).

■ Appellants argue further that, when the legislation that contained these terms was first passed in Act 129 of 1927, the legislature could not have intended the terms "telephone" and "telephonic" to include entities such as CMRS providers. In support of their argument, they cite *Radio Tel. Comm. v. Southeastern Tel. Co.*, 170 So.2d 577 (Fla. 1964), in which the Florida court agreed with such a proposition. We decline to follow the holding in the Florida case and instead adopt the rationale approved by the Kentucky court in *Kentucky Cellular Tel. Co., supra,* that "[i]t is apparent that many of the communications technologies utilized today by the traditional 'land-line' telephone companies are not the same technologies that were used at the time of the statute adoption. This fact does not mean that telephone companies become something else simply because they use improved communication techniques." *Id.*, 897 S.W.2d at 603. The terms "telephone" and "telephonic" are flexible enough to encompass changes in the state of the art of telephone communication, which is what we have in this case.

■ Before leaving this issue, we also note that appellants are surely subject to assessment as "other similar companies." As we have already discussed, appellants' similarities to wire-based telephone companies far outweigh their differences. Further, appellants use public airwaves and air space for the transmission of messages.

■ We turn now to appellants' equal protection argument. Appellants claim that their right to equal protection was violated because, while their property was assessed by the Commission's Tax Division, the property of similarly situated taxpayers such as paging companies was assessed by county assessors. The Equal Protection Clause of the Fourteenth Amendment protects an individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class. *See Hillsborough v. Cromwell*, 326 U.S. 620 (1946). However, the clause applies only to taxation that in fact bears unequally on persons or property of the same class. *Allegheny Pittsburgh Coal Co. v. County Comm'n of Webster County*, 488 U.S. 336 (1989). Further, the Equal Protection Clause requires a "rough equality" in the tax treatment of similarly situated property owners. *Id.*; *Pockrus v. Bella Vista Village Prop. Owners Ass'n*, 316 Ark. 468, 872 S.W.2d 416 (1994).

■ Even if we agree that appellants and paging companies are similarly situated enterprises, appellants have not shown that they bear an unequal burden, nor have they shown a lack of rough equality between their treatment by the Tax Division and the paging companies' treatment by county assessors. No matter which entity conducts the assessment, the same twenty-percent valuation rate is used. *See* Arkansas Code Annotated section 26-26-304(b)(3) (Supp. 1999), requiring that the assessed value of property be placed on the tax record at twenty-percent of its true and full market or actual value. Although appellants, in a joint stipulation of facts before the Commission, claimed that, had the county assessors rather than the Tax Division assessed their property, the assessments would have been lower, the Tax Division included a stipulation that the assessments by the counties could possibly have been higher or lower than its own assessments. Given the uniform assessment rate, we can only conclude that, in the absence of any contrary evidence by appellants, any possible difference in assessed values would result from the application of different accounting methods. The use of different accounting methods to assess property in the same class is of no constitutional moment. *Allegheny Pittsburgh Coal Co., supra; Arkansas Elec. Coop. Corp. v. Arkansas Pub. Serv. Comm'n*, 307 Ark. 171, 818 S.W.2d 935 (1991). We therefore find no constitutional violation based upon the record before us.

Appellants' final argument concerns a procedural matter in circuit court. Before trial, appellants filed a motion for leave to present additional evidence. They asked to present experts to testify regarding the difference between themselves and traditional telephone companies and to testify that assessment by county assessors

would result in a lower assessment. The trial judge refused to allow the additional evidence on the basis that his review was restricted to the record made before the Commission.

 We agree with the trial judge. Arkansas Code Annotated section 26-24-123(c) (Repl. 1997) provides that appeals from a Commission ruling regarding assessment shall be tried *de novo*. The type of *de novo* trial contemplated under this statute is not the type that calls for the reception of new evidence but the type in which review is confined to the record made before the administrative body. *See* Comment, *Judicial Review of Findings of the Arkansas Public Service Commission*, 2 ARK. L. REV. 67 (1947-48); *see also St. Louis-San Francisco Ry. Co. v. Public Serv. Comm'n*, 227 Ark. 1066, 304 S.W.2d 297 (1957). It is also important to read section 26-24-123(c) in conjunction with Arkansas Code Annotated section 26-24-101(1)(B)(i)(b) (Repl. 1997), which specifically provides that appeals from a Commission ruling with regard to the assessment of a public utility shall be to circuit court "upon the record before the commission."

Affirmed.

PITTMAN, HART, GRIFFEN, CRABTREE, and BAKER, JJ., agree.