The Honorable Robert White State Representative 412 Arkansas Street Camden, Arkansas 71701-6614
Dear Representative White:
I am writing in response to your request for an opinion on several questions you have posed on behalf of Chairman Wes Marden of the Camden Airport Commission. In previous correspondence to this office, Chairman Marden summarized the underlying facts as follows:
 As you are aware there has been a proliferation of "cell" towers not only in our area but around the country and the Commission feels the need to get control over this problem. We have been strongly urged by the State Aeronautics Department and the Federal Aviation Administration (FAA) to protect the airspace around our facilities as it is now a requirement before funds for federal Airport Improvement Programs (AIP) projects will be authorized in the future. The Airport currently has $1,300,000 AIP grant approved to extend our taxiway at Camden.
 Camden has one existing 6,501' runway identified as Runway 18-36. In addition the Airport has a proposed East-West Runway that will be either an 8-26 or a 9-27 Runway. This proposed Runway has been approved by the FAA as a 9-27 Runway. I have provided as enclosure (1) a copy of the FAA's July 12, 2001 letter addressed to me approving this runway. Also provided as enclosure (2) is a copy of Camden's official Airport Layout Drawing (ALD). This drawing is in both the Federal and State databases and is now being used by the FAA to restrict/limit tower construction in the vicinity of both Runways.
Against this backdrop, you have posed the following questions:
 1. Can a "planned" runway that is approved for airspace utilization protection and future construction by the Federal Aviation Administration (FAA) be considered a "runway" under A.C.A. § 27-117-105
even though it has not been constructed?
 2. Will the proposed attached zoning ordinance for the City of Camden Airport [enclosure 3] violate provisions of ACA 27-117-105 or 14-363-201 [et seq.], if enacted?
RESPONSE
In my opinion, unless preemptive federal law dictates otherwise, the answer to your first question is "no." Assuming the restrictions contained in the proposed ordinance do not exceed those imposed by the FAA, I believe the answer to your second question is likewise "no."
Question 1: Can a "planned" runway that is approved for airspaceutilization protection and future construction by the Federal AviationAdministration (FAA) be considered a "runway" under A.C.A. § 27-117-105even though it has not been constructed?
In my opinion, unless some preemptive provision of federal law holds to the contrary, the answer to your question is "no."
Section 27-117-105 of the Arkansas Code (Supp. 2001), captioned "Minimum distance between towers and runways," provides in pertinent part:
 (a) For purposes of this section, an "aeronautical facility" means any public airport or military airport which has a hard surface runway.
 (b) No structure in excess of one hundred feet (100') in height may be constructed within twenty-five hundred feet (2,500') from either side of a runway centerline running the full length of that runway, including the runway protection zone and runway safety area, extending outward from the approach end of any runway for seven (7) nautical miles, and rising upward from that runway end surface at a slope of sixty-five feet (65') horizontally to one foot (1') vertically for the seven (7) nautical miles of any aeronautical facility used by the public unless a permit for such construction has been issued by the governing body responsible for operations at the aeronautical facility.
 (c) The governing body of an aeronautical facility may levy a fine not to exceed one thousand dollars ($1,000) per day against the owner of any structure constructed in violation of this section. The fine may be levied for each day until the structure is removed.
As noted in Southwestern Bell Mobile v. Arkansas Public ServiceCommission, 73 Ark. App. 222, 228, 40 S.W.3d 838 (2001):
 The basic rule of statutory construction is to give effect to the intent of the legislature. Central Southern Companies, Inc. v. Weiss, 339 Ark. 76, 3 S.W.3d 294 (1999). When the language of a statute is plain and unambiguous, legislative intent is determined from the ordinary meaning of the language used. Id. In considering the meaning of a statute it is construed just as it reads, giving words their ordinary and usually accepted meaning in common language. Id.
(Footnote omitted.) It is further accepted that courts should construe legislative language from the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of limiting or extending the meaning. Manning v. State,330 Ark. 699, 956 S.W.2d 184 (1997).
In applying these principles, I am struck by the fact that A.C.A. §27-117-105 at no point qualifies the unambiguous term "runway" in imposing its height restrictions. A "runway" is "a paved or cleared strip on which planes land and take off." Random House Webster's UnabridgedDictionary (2d ed. 1999). Unless somehow qualified — as, for instance, by the term "planned," "approved" or "proposed" — the word "runway" clearly denotes only an existing, operational landing and launching strip for airplanes. Accordingly, I do not believe the proposed runway referenced in your request constitutes a "runway" as that term is used in the statute. However, as discussed below, it does not necessarily follow from this conclusion that the City of Camden is precluded from imposing zoning restrictions in the area at issue.
Question 2: Will the proposed attached zoning ordinance for the City ofCamden Airport [enclosure 3] violate provisions of ACA 27-117-105 or14-363-201 [et seq.], if enacted?
As your question suggests, in addressing the law regarding zoning restrictions around airports, one must also consider the provisions of the Airport Zoning Enabling Act, which is codified at A.C.A. §§ 14-363-201
through — 208. Specifically, A.C.A. § 14-363-204 provides in pertinent part:
 (a)(1) In order to protect airport approaches against obstruction, to protect the life and property of users of airports of the public utility class[1] and of occupiers of land in their vicinity, to encourage and foster the use of airports, to safeguard the public investment therein, and to promote the public health, safety, and general welfare, all cities, of whatever class, are given the power to promulgate, administer, and enforce, in the manner and upon the conditions prescribed in this section, zoning regulations with respect to any airports of the public utility class by which they may be served, whether owned by them or not, dividing the area surrounding such airports into zones and limiting the height of all existing and future structures and objects of natural growth therein.
* * *
 (2)(b)(1) In promulgating airport zoning regulations under authority of this subchapter, the city or agency thereof promulgating the regulations shall prescribe such zone and height limits as it considers reasonably necessary and calculated to insure airport approaches and turning space adequate for all flying operations expected to be conducted at the airport in question.
 (2) The limits shall not be more exacting than is justified taking into account, among other considerations, the terrain in the vicinity of the airport, the height of existing structures and objects of natural growth above the level of the airport, and the possibility of lowering or removing existing obstructions.
 (3) The area zones shall in no case extend more than five (5) miles from the airport.[2]
 (4) The zone and height limits shall in no case be more exacting than is necessary to conform to the current airport approach and turning space standards of the Federal Aviation Administration, or such other agency of the federal government as may be concerned with the development of civil aeronautics.
Several provisions of this statute strike me as pertinent to your request. First, in authorizing "reasonable" zoning restrictions "calculated to insure airport approaches and turning space adequate for all flying operation expected to be conducted at the airport in question," A.C.A. § 14-363-204(2)(b)(1) (emphasis added), the legislature appears to have authorized restrictions in anticipation of future air activity. I do not consider this interpretation of the statute as conflicting with the provisions of A.C.A. § 27-117-105, which merely imposes an absolute restriction with respect to existing runways. I do not believe such restrictions are inconsistent with a discretionary grant of authority to cities to impose additional reasonable restrictions in anticipation of future construction.
Second, I find it significant that subsection (d) of the statute tailors the permissible range of zoning restrictions to FAA standards. You report that the FAA has not only approved construction of the proposed runway but has restricted tower construction in the adjacent area. Assuming the restrictions imposed in the proposed ordinance do not exceed those contained in the FAA standards, I believe the ordinance would be deemed a permissible exercise of the discretion afforded by A.C.A. § 14-363-204.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] Section 14-363-202(3) of the Code provides: "An airport is of the `public utility class' if it is available to the public for private flying or otherwise as a point of arrival or departure by air."
[2] In my opinion, this distance restriction has been superseded by the subsequently enacted A.C.A. § 27-117-105(b), which imposes restrictions for a distance of seven nautical miles.