# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2884

_____

| | | |
|---|---|---|
| City of Jefferson City, Missouri, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| City of Springfield, Missouri, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | |
| v. | * | Appeals from the United States |
| | * | District Court for the |
| Cingular Wireless LLC; Southwestern | * | Western District of Missouri. |
| Bell Wireless, LLC, | * | |
| | * | |
| Defendants/Appellants, | * | |
| | * | |
| SBC Communications, Inc., | * | |
| Southwestern Bell Telephone, LP; | * | |
| Nextel West Corp.; Alltel | * | |
| Communications, Inc., | * | |
| | * | |
| Defendants. | * | |

_____

No. 07-2885

_____

| | |
|---|---|
| City of Jefferson City, Missouri, | * |
| | * |
| Plaintiff, | * |
| | * |
| City of Springfield, Missouri, | * |

<pre>
                                    *
        Plaintiff/Appellee,         *
                                    *
    v.                              *
                                    *
Cingular Wireless LLC; SBC          *
Communications, Inc; Southwestern   *
Bell Wireless, LLC; Southwestern Bell   *
Telephone, LP;  Nextel West Corp.,  *
                                    *
        Defendants,                 *
                                    *
Alltel Communications, Inc.,        *
                                    *
        Defendant/Appellant.        *
</pre>

_____

Submitted:  March 12, 2008
Filed:  July 3, 2008

_____

Before WOLLMAN, HANSEN, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The issue before us is whether providing cell phone services[1] in the City of Springfield ("Springfield")[2] makes a company subject to a local tax ordinance on businesses who engage in "supplying telephones, and telecommunications and

---

[1]The defendants in this case describe their services as wireless, telecommunications, or "Commercial Mobile Radio Services."  We will refer to the services generally as "cell phone services," as that is how the services are marketed to the public and generally recognized.

[2]The City of Jefferson's claims were dismissed by stipulation.

telephonic service, and telecommunications services, within the city."[3] Springfield Code § 70-452 (2000). The district court[4] granted Springfield's request for declaratory judgment and held that the defendants, Alltel Communications, Inc. ("Alltel"), Cingular Wireless LLC, and Southwestern Bell Wireless, LLC (Cingular and Southwestern Bell hereinafter referred to as "Cingular"), provide telephonic services within Springfield and are therefore subject to the tax. The district court dismissed Springfield's tax collection claim under Missouri's exclusive tax remedy doctrine because Springfield must follow its own tax assessment and collection procedures before bringing suit to collect the tax. Because we conclude that Springfield's request for a declaratory judgment on the issue of liability was properly before the district court and that a cell phone is a telephone and cell phone services are telephonic services for purposes of Springfield's tax ordinance, we affirm.

## I. Background

Springfield has a long-standing ordinance that imposes a 6% tax on the gross receipts of any business that supplies telephone and telephonic service within Springfield. This ordinance was modified in 2000 as part of a recodification that changed section numbers, clarified existing language, and made the code electronically searchable. The 2000 recodification of the tax ordinance added "telecommunications" and "telecommunications services" to the existing language in the ordinance. Springfield Code § 70-452.

---

[3]It is undisputed that the defendants engage in providing services within Springfield. Whether these services are telephones and telephonic services is the issue in this case. The quantity of services provided "within the city," and the resulting amount of taxes owed is an issue of fact not before us today.

[4]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

In 2004, Springfield sent a demand letter to cell phone companies that did business within Springfield requesting payment of the tax for the past five years and indicating that if no action was taken, Springfield would pursue legal remedies.[5] The defendants did not comply, and Springfield brought this suit in federal district court to collect the past-due taxes.

Springfield's complaint sought collection of the tax owed. Springfield filed a motion for summary judgment on the issue of whether the defendants were liable to pay the tax, which the district court and the parties treated as a request for a declaratory judgment on the issue of liability. The defendants argued that they provide "Commercial Mobile Radio Service" ("CMRS"), and therefore the tax does not apply to them. The defendants also challenged the validity of the ordinance. On June 9, 2005, the district court held that the term "telephone" in the tax ordinance encompasses CMRS and that the defendants offer these services within Springfield and are therefore subject to the tax. City of Jefferson v. Cingular Wireless, LLC, No. 04-4099 (W.D. Mo. June 9, 2005) (City of Jefferson I) (order granting plaintiffs' motion for partial summary judgment). The district court did not reach the issue of whether the 2000 modification of the ordinance violated the Hancock Amendment to the Missouri Constitution because it concluded that the issue in the case involved the language in the ordinance that existed before 2000. The district court did not rule on the amount of tax owed.

On August 21, 2006, Alltel filed a motion to dismiss for lack of subject matter jurisdiction or, in the alternative, that the district court abstain from deciding the case. On October 17, 2006, the district court denied the motion to dismiss on the legal issue of liability, but dismissed Springfield's claim for tax collection without prejudice, concluding that because Springfield had an exclusive administrative remedy for tax

---

[5]The letter stated that the five-year time frame was chosen because of the relevant statute of limitations.

assessment and collection, it was required to follow that procedure. <u>City of Jefferson v. Cingular Wireless, LLC</u>, No. 04-4099, 2006 WL 2987678 (W.D. Mo. Oct. 17, 2006) (<u>City of Jefferson II</u>) (order dismissing Springfield's tax collection claim without prejudice). On Alltel's motion for reconsideration, the district court declined to vacate its June 9, 2005, order and held that the defendants were liable to pay the tax. <u>City of Jefferson v. Cingular Wireless, LLC</u>, No. 04-4099, 2006 WL 3937243 (W.D. Mo. Dec. 20, 2006) (<u>City of Jefferson III</u>) (order declining to vacate or amend <u>City of Jefferson I</u> and <u>City of Jefferson II</u>).

Alltel then argued that it had not been given a fair opportunity to litigate the propriety of the request for declaratory judgment. The district court vacated <u>City of Jefferson I</u> and <u>City of Jefferson II</u> and allowed Springfield to amend its complaint to add a claim for declaratory judgment on the issue of liability.[6] Count I of the second amended complaint requested past-due taxes from the defendants. Count III sought a declaratory judgment that the tax ordinance applies to the defendants. Alltel filed a motion to dismiss the second amended complaint. On July 3, 2007, the district court dismissed Count I without prejudice as to all defendants and denied the motion to dismiss Count III. <u>City of Jefferson v. Cingular Wireless, LLC</u>, No. 04-4099, 2007 WL 1965572 (W.D. Mo. July 3, 2007) (<u>City of Jefferson IV</u>) (order *nunc pro tunc* dismissing without prejudice Springfield's tax collection claim).

---

[6]During a teleconference on January 29, 2007, the district court discussed with the parties the prospect of allowing Springfield the opportunity to amend its complaint to add a claim for declaratory judgment. The district court noted that it was allowing the amendment for Alltel's benefit because Alltel argued that it was unfair that it did not have a chance to raise its abstention argument in a timely fashion. In the July 3, 2007, order, the district court further noted that it believed Springfield's claim for declaratory judgment, while not originally pleaded, was properly before the court, even before the second amended complaint, pursuant to Rule 15 of the Federal Rules of Civil Procedure. <u>City of Jefferson IV</u>, 2007 WL 1965572, at *2 n.4.

Also on July 3, 2007, the district court entered another order, which held that the tax is enforceable against the defendants because it applies to cell phone services provided within Springfield. City of Jefferson v. Cingular Wireless, LLC, No. 04-04099 (W.D. Mo. July 3, 2007) (City of Jefferson V) (order *nunc pro tunc* granting Springfield's motion for summary judgment). Accordingly, the district court granted Springfield's motion for summary judgment on the issue of liability. The district court noted that the amount of tax owed is a fact-intensive inquiry that must be resolved through Springfield's administrative process, and it thus dismissed Springfield's request for monetary damages.

## II. Jurisdiction, Exhaustion, and Abstention

Alltel asserts that the district court lacked subject matter jurisdiction under Missouri's exclusive tax remedy doctrine and exhaustion doctrine, that the constitutional justiciability requirements of ripeness and standing were not met, that Springfield failed to state a claim, and that even if the district court had jurisdiction, it should have abstained.

Our resolution of this case requires us to interpret Missouri law.

> We review the district court's interpretation of state law de novo. We are bound by the decisions of the Supreme Court of Missouri in interpreting Missouri law. Because the Supreme Court of Missouri has not yet addressed this precise issue, we must determine what that court would probably hold if it were called upon the decide the issue. In making this determination a federal court may consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue.

Missouri v. City of Glasgow, 152 F.3d 802, 805-06 (8th Cir. 1998) (internal citations and quotation omitted). We review *de novo* questions of federal subject matter jurisdiction and the district court's disposition of a motion to dismiss. Canady v. Allstate Ins. Co., 282 F.3d 1005, 1012 (8th Cir. 2002) (discussing subject matter jurisdiction); Breedlove v. Earthgrains Baking Cos, Inc., 140 F.3d 797, 798-99 (8th Cir. 1998) (on a motion to dismiss, "[a] district court must accept the allegations contained in the complaint as true, and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party" (internal citation omitted)). We review the district court's decision regarding whether to abstain for abuse of discretion. Aaron v. Target Corp., 357 F.3d 768, 774 (8th Cir. 2004) ("the underlying legal determinations receive plenary review").

## A. Subject Matter Jurisdiction

It is undisputed that the parties are diverse and that more than $75,000 is in controversy. Furthermore, we note that Cingular believes that the district court properly exercised its jurisdiction in this case. Alltel's argument that the district court did not have subject matter jurisdiction rests on the assertion that a Missouri state court would not have jurisdiction to hear this case under the Missouri exclusive tax remedy doctrine and the doctrine of administrative exhaustion, with the result that, pursuant to Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), federal subject matter jurisdiction is lacking. Even if we assume, without deciding, that the exclusive tax remedy doctrine is jurisdictional,[7] we conclude that neither doctrine would prevent a Missouri state court from exercising its jurisdiction in this case and therefore subject matter jurisdiction is not lacking.

---

[7]The district court dismissed Springfield's tax collection claim for failure to state a claim, not for lack of subject matter jurisdiction. City of Jefferson II, No. 04-4099 (W.D. Mo. Oct. 17, 2006).

## 1. Missouri's Exclusive Tax Remedy Doctrine

The Missouri exclusive tax remedy doctrine requires a taxing authority to follow its tax assessment and collection procedures before a tax collection claim can be brought in court. City of St. Louis v. United Rys. Co. of St. Louis, 174 S.W. 78, 93 (Mo. 1914) (en banc) ("if a remedy is specified for the collection of a tax, it will be held to be exclusive, where no other is provided"); Missouri ex rel. Hayes v. Snyder, 41 S.W. 216, 217 (Mo. 1897). The Missouri exclusive tax remedy doctrine does not apply, however, to the question in this case because the district court was presented with the legal question of whether the tax applies to the defendants, not the factual question of how much Springfield can collect from the defendants, assuming that they are subject to the tax. See M.L. Cross, Annotation, Tax Questions as Proper Subject of Action for Declaratory Judgment, 11 A.L.R.2d 359 (Supp. 2005) (outlining cases from other jurisdictions, including New York, which have similar exclusive tax remedy doctrines but allow declaratory judgments for the pure legal issue of the validity or application of a tax). Although Springfield has an administrative remedy for tax assessment and collection, the ordinance does not provide a specific or exclusive remedy for a challenge to the validity or application of the ordinance.[8] The cases cited by Alltel address only tax collection claims in which the state or local governmental entity is seeking a money judgment. See Missouri ex rel. Hayes , 41 S.W. at 217 ("if the statutes of this state make special provisions for the collection of taxes against real estate, and do not apparently contemplate that any others will be necessary, the mode of collection prescribed by statute is exclusive"); Missouri ex rel. George v. Dix, 141 S.W. 445, 446 (Mo. Ct. App. 1911) ("The point at issue is whether the remedy provided in the ordinance is exclusive or merely cumulative. If exclusive,

---

[8]See City of Jefferson IV, 2007 WL 1965572, *3-*4 (discussing the tax assessment and collection procedures and concluding that such administrative procedures are sufficient for Springfield's *tax collection* claim).

an action for a money judgment for the delinquent tax will not lie, but if cumulative the present suit was properly brought, and, as the facts are undisputed, the judgment should have been for the city."); see also Missouri ex rel. Steed v. Nolte, 138 S.W.2d 1016 (Mo. 1940) (en banc) (identifying the procedure for fourth-class cities to collect delinquent taxes); Kansas City v. Field, 226 S.W. 27 (Mo. 1920) (outlining cases); City of Carondelet, to Use of Reuter v. Picot, 38 Mo. 125, 1866 WL 4243, at *3 (Mo. 1866) (cannot bring action to compel the payment of taxes unless the tax statute authorizes the action).  Alltel has not pointed to any cases in which the exclusive tax remedy doctrine was used to dismiss a claim involving the legal issue of whether a tax was valid or whether it applied to a particular taxpayer.

Alltel's assertion that a Missouri court would have to dismiss Springfield's claim for declaratory judgment is unfounded because the doctrine does not apply to Springfield's claim.  Because there is no established precedent indicating that Springfield's claim for declaratory judgment may not be heard until after the administrative procedures for tax assessment and collection have been completed, we conclude that the doctrine would not require a Missouri court to dismiss Springfield's claim for declaratory judgment.  This conclusion is supported by several cases in which Missouri courts have considered the legal issue of the validity or the applicability of a tax ordinance without requiring the exhaustion of administrative assessment and collection procedures.  See Council House Redev. Corp. v. Hill, 920 S.W.2d 890 (Mo. 1996) (en banc) (trial court erroneously dismissed taxpayer's claim for declaratory judgment; administrative exhaustion not required when the issue was only whether the taxpayer was exempt from taxation, not the valuation of the tax assessment); Nicolai v. City of St. Louis, 762 S.W.2d 423 (Mo. 1988) (en banc) (taxpayer sought declaratory judgment that St. Louis did not have authority to tax his premises as a cat kennel; circuit court dismissed for failure to state a claim and failure to exhaust administrative remedies, but the Missouri Supreme Court reversed and issued declaratory judgment even though neither St. Louis nor the taxpayer had pursued administrative collection or appellate procedures); B & D Inv. Co., Inc. v.

Schneider, 646 S.W.2d 759 (Mo. 1983) (en banc) ("It is a firmly established principle that when an administrative remedy is adequate, ordinarily that remedy is exclusive . . . . However, the availability of an administrative remedy does not bar other remedies under all circumstances. For instance, when a taxpayer does not question the valuation of his property, but asserts it is not subject to the tax, he need not appear before the Board of Equalization but may enjoin the enforcement of the tax."); Washington Univ. v. Baumann, 108 S.W.2d 403 (Mo. 1937) (en banc) (allowing taxpayer an injunction against the sale of property for the collection of taxes even though administrative remedies were not exhausted because the taxpayer was contractually immune from taxation, one judicial proceeding on the issue of exemption could avoid a multitude of litigations, and the taxpayer would suffer irreparable injury without the injunction); United Rys. Co. of St. Louis, 174 S.W. 78 (giving res judicata effect to prior federal court case that held the railroad was subject to a city tax); Holland Furnace Co. v. City of Chaffee, 279 S.W.2d 63 (Mo. Ct. App. 1955) (considering claim for declaratory judgment regarding the validity of a tax ordinance).

Alltel asserts that any case in which a taxpayer requested a declaratory judgment that it was not subject to a tax ordinance is inapposite because, in the case before us, Springfield is the entity seeking a declaratory judgment and is thereby attempting to avoid its own administrative procedures. We disagree. If, under the exclusive tax remedy doctrine, Missouri courts will address the pure legal issue of whether a tax applies in a particular situation before the parties complete the administrative tax assessment and collection procedures, it should not matter which party is seeking the declaratory judgment. Furthermore, we note that completing the administrative procedures in this case would be time-consuming, expensive, and ultimately unnecessary if the ordinance is held to not apply to the defendants. Additionally, the pure legal issue involved in this case is more suited for judicial determination than for administrative determination. See State Tax Comm'n v. Admin. Hearing Comm'n, 641 S.W.2d 69, 75 (Mo. 1982) (en banc) ("Agency

adjudicative power extends only to the ascertainment of facts and the application of existing law thereto in order to resolve issues within the given area of agency expertise. The declaratory judgment is a judicial remedy. . . . The declaration of the validity or invalidity of statutes and administrative rules thus is purely a judicial function." (internal citations omitted)); see also Springfield, Mo., Code §§ 70-131 through 70-157 (administrative hearings do not have formality requirements such as the rules of evidence). Accordingly, we conclude that the district court properly decided that the Missouri exclusive tax remedy doctrine did not require it to dismiss Springfield's claim for declaratory judgment on the issue of liability.

## 2. Administrative Exhaustion Doctrine

Alltel's remaining arguments regarding subject matter jurisdiction, justiciability,[9] failure to state a claim, and abstention all rest on the contention that Springfield failed to exhaust its administrative remedies. See Premium Standard Farms, Inc. v. Lincoln Twp. of Putnam County, 946 S.W.2d 234, 237 (Mo. 1997) (en banc) (exhaustion of administrative remedies generally required before a court has jurisdiction unless the administrative remedy is not adequate or the controlling issue in the case is a pure legal issue). As the district court found, and as discussed above, Springfield's tax assessment and collection procedures do not provide an adequate remedy for determining whether the tax applies to the defendants. Although Alltel vigorously asserts that the administrative remedy for tax assessment and collection

---

[9]We note that, although justicability requirements cannot be waived by the parties, Alltel's Answer to Springfield's Complaint and First Amended Complaint conceded that it believed a justiciable controversy existed. Even without this concession, we conclude that Springfield's claim for declaratory judgment raises a case or controversy and meets the constitutional justicability requirements. See Arsenal Credit Union v. Giles, 715 S.W.2d 918, 921 (Mo. 1986) (en banc) (concluding that a case or controversy existed regarding a claim for declaratory judgment on the constitutionality of a tax exemption and therefore the claim was properly before the court).

should be used to determine liability, the district court noted in <u>City of Jefferson III</u> that Alltel has refused to pay the tax and refused to file the information needed for Springfield to make a tax assessment.[10]  <u>See</u> 2006 WL 3937243, at *2.  Although Alltel's refusal to cooperate may not make the tax collection remedy impossible, it does highlight the inadequacy of those procedures, which would require a lengthy and expensive calculation of the tax owed before a legal determination is made whether the defendants are liable for the tax.  Thus, we conclude that Springfield's administrative procedures for tax assessment and collection are not adequate to determine the issue of liability and do not represent an exclusive remedy on that issue.

Furthermore, in the absence of any tax collection claim, no factual disputes remained, nor was the district court required to make any classifications or value determinations.[11]  Instead, Springfield's request for a declaratory judgment presented the court with an issue of statutory interpretation.  Such questions present pure legal issues and therefore satisfy an exception to the general exhaustion of remedies rule. <u>Premium Std. Farms</u>, 946 S.W.2d at 237-38 (permitting court to resolve a purely legal issue of whether a township had authority to impose certain regulations, even though the plaintiff had not sought a variance and therefore had not exhausted administrative remedies); <u>City of Bridgeton v. City of St. Louis</u>, 18 S.W.3d 107, 112 (Mo. Ct. App. 2000) (question of whether zoning ordinance applied was question of law and

---

[10]Springfield's Second Amended Complaint, filed on February 7, 2007, states that Alltel has made a recent payment of taxes without waiving its position in this litigation but further notes that the defendants have refused to pay their full tax liability despite opportunities to do so under protest.

[11]Alltel repeatedly argues that the issue before the district court was not a pure legal issue and that it was at least a mixed question of fact and law.  This argument ignores the fact that the district court dismissed Springfield's tax collection claim.  Without the collection claim, there are no facts to determine.  The sole issue before the court is whether the defendants' business activity falls within the statutory language of providing telephones and telephonic services.

therefore administrative remedies did not need to be exhausted before the court could determine immunity).  Accordingly, we conclude that Springfield's claim for declaratory judgment satisfies at least one of the exceptions to the exhaustion doctrine. Thus, the district court had subject matter jurisdiction, the justicability requirements are met, and the district court did not err in denying Alltel's motion to dismiss for failure to state a claim.

### 3.  Tax Injunction Act

Alltel raises the application of the Tax Injunction Act, 28 U.S.C. § 1341, which presents a question of subject matter jurisdiction.  See Burris v. City of Little Rock, 941 F.2d 717, 721 (8th Cir. 1991) (raising issue of Tax Injunction Act sua sponte). Section 1341 states that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  In addition to prohibiting injunctive relief, § 1341 also bars declaratory judgment actions.  Burris, 941 F.2d at 720 (citing California v. Grace Brethren Church, 457 U.S. 393, 411 (1982)).  The objective of § 1341 is:

> (1) to eliminate disparities between taxpayers who could seek injunctive relief in federal court—usually out-of-state corporations asserting diversity jurisdiction—and taxpayers with recourse only to state courts, which generally required taxpayers to pay first and litigate later; and (2) to stop taxpayers, with the aid of a federal injunction, from withholding large sums, thereby disrupting state government finances.

Hibbs v. Winn, 542 U.S. 88, 104 (2004) (citing the Senate Report).  When Congress enacted § 1341, "Congress trained its attention on taxpayers who sought to avoid paying their tax bill by pursuing a challenge route other than the one specified by the taxing authority.  Nowhere does the legislative history announce a sweeping congressional direction to prevent federal-court interference with all aspects of state

-13-

tax administration." Id. at 104-05, 105 n.7 (internal quotation omitted) ("The TIA does not prohibit interference with 'the operation of, or compliance with,' state tax laws; rather, § 1341 proscribes interference only with those aspects of state tax regimes that are needed to produce revenue—i.e., assessment, levy, and collection."). Accordingly, there is a crucial distinction between a plaintiff who seeks a declaratory judgment that a specific tax is unconstitutional or invalid and a plaintiff who seeks a declaratory judgment that a particular taxpayer is engaged in an activity that makes the taxpayer subject to a state or local tax. See id. at 104 (allowing party to challenge in federal court the constitutionality of a state tax credit given to a third-party); Jefferson County v. Acker, 527 U.S. 423, 433-35 (1999) (allowing federal jurisdiction over a claim brought in state court to collect state taxes and removed by defendants to federal court wherein the defendants argued that application of the tax violated federal law; the Court noted that in enacting § 1341, "the state laws to which Congress referred surely do not preclude the States from enforcing their taxes in court").

Alltel's citation to Orange County v. Expedia, Inc., is neither controlling nor persuasive. See 440 F. Supp. 2d 1341 (M.D. Fla. 2006). In Expedia, a district court dismissed a claim by a county seeking a declaratory judgment that it had the "power, privilege and right to audit the Defendants regarding the [tax], and to assess and collect [the tax] due from the Defendants." Id. at 1343. The court acknowledged that the Supreme Court has sanctioned federal jurisdiction over claims by local governments seeking tax collection. Id. at 1343 (citing Acker, 527 U.S. at 433-34). Nevertheless, without analyzing the text of § 1341, its purpose, or its legislative history, the court held that declaratory judgments sought by local governments are always barred by § 1341. Expedia, 440 F. Supp. 2d at 1344. We conclude that neither the text of § 1341 nor the relevant Supreme Court holdings compel such a result. Springfield's claim in this case is distinguishable from that asserted in Expedia because Springfield is not seeking a determination of its "right" or "power" to tax telephones and telephonic services. Rather, the issue is one of statutory interpretation affecting the application of the tax, with the specific question being whether the

-14-

defendants provide telephones and telephonic services and not whether the tax is valid.

We find more persuasive the reasoning in <u>Mayor & City Council of Balt. v. Vonage Am. Inc.</u>, in which a district court was faced with a situation similar to the one before us today. <u>See</u> 544 F. Supp. 2d 458 (D. Md. 2008). In <u>Vonage</u>, the City of Baltimore brought suit against a provider of "Voice over Internet Protocol," seeking a declaratory judgment that a local tax on telecommunications applied to the provider. <u>Id.</u> at 461. The provider filed a counterclaim seeking a declaratory judgment that it was not subject to the tax. <u>Id.</u> The district court analyzed § 1341 and concluded that the provider's declaratory judgment was barred, but adopted the argument that Baltimore's claim for declaratory judgment was not barred by § 1341 because it was not a claim by a taxpayer seeking to prevent tax collection proceedings. <u>Id.</u> at 465-66 (citing <u>Acker</u>, 527 U.S. 423). For the same reason, we conclude that § 1341 does not bar Springfield's claim in this case.

## B. Abstention

With regard to its abstention claim, Alltel cites <u>Brillhart v. Excess Ins. Co. of Am.</u>, for the proposition that even if a district court has jurisdiction to enter a declaratory judgment, it is not required to exercise that jurisdiction. <u>See</u> 316 U.S. 491, 494 (1942). <u>Brillhart</u> does not suggest, however, that the district court in this case was required to abstain. <u>See id.</u> at 494-95 (motion to dismiss based upon a pending state proceeding). With regard to Alltel's citation to a state court case filed in the Circuit Court in St. Louis County on August 28, 2006, No. 01CC-4454, Alltel has not indicated where in the record it made the district court aware of this case. Accordingly, we accept the district court's finding that there are no parallel state court cases and rest on the district court's conclusion, after conducting a thorough analysis of the six factors that should be considered, that it need not abstain. <u>See City of</u>

-15-

Jefferson IV, 2007 WL 1965572, at *10 (discussing Scottsdale Ins. Co. v. Detco Indus., Inc., 426 F.3d 994, 998-99 (8th Cir. 2005)).

Alltel also argues that the district court should have abstained under Burford v. Sun Oil Co. because timely and adequate state review was available and the case involves difficult questions of state law and public policy. See 319 U.S. 315 (1943). Again, Alltel's argument comes down to the assertion that Springfield did not exhaust its administrative remedies. As discussed above, we agree with the district court that because there is no adequate administrative remedy for the legal issue presented in this case, exhaustion is not required. Additionally, the district court noted that early in the litigation it had inquired of the parties why the case was in federal court and heard no argument that it should abstain from hearing the case. City of Jefferson IV, 2007 WL 1965572, at *8; see Evanston Ins. Co. v. Johns, No. 07-2303, 2008 WL 2493003, at *2 (8th Cir. June 24, 2008). In fact, Alltel did not raise the issue of abstention until much time and effort had been invested by all parties and the district court had ruled against it. City of Jefferson III, 2006 WL 3937243, at *3. Accordingly, we conclude that the case was properly before the district court and the district court did not abuse its discretion by declining to abstain.

## III. Springfield's Tax Ordinance

Alltel and Cingular argue that the district court erred in granting Springfield's motion for summary judgment because cell phone services are not telephonic services. Alltel contends that the district court erred by not strictly construing Springfield's authority to tax "telephone companies" and by not strictly construing the terms "telephones" and "telephonic services" in the tax ordinance itself. Cingular asserts that it provides telecommunications services, not telephonic services, and that the district court erred by ignoring the 2000 modification of the tax ordinance and applying the language of the pre-2000 version. Defendants further argue that they are not subject to the tax on "telecommunications services" because Springfield's Charter

grants it the authority to tax "telephone companies," not "telecommunications companies," and the 2000 recodification of the tax ordinance violated the Hancock Amendment. In the alternative, the defendants argue that the tax ordinance is ambiguous and therefore must be construed in favor of the defendants.

We review *de novo* a district court's grant of summary judgment. Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC, 519 F.3d 466, 471 (8th Cir. 2008). In so doing, we view the record in the light most favorable to the nonmoving party and affirm if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Id. We review *de novo* the district court's determinations of law. Id.

## A.  The Plain Language of Springfield's Tax Ordinance

Section 70-452 of the Springfield Code states that "[e]very person engaged in the business of supplying telephones, and telecommunications and telephonic service, and telecommunications services, within the city shall pay as a license tax a sum equal to six (6) percent of the gross receipts from such business." The ordinance does not define the terms "telephones," "telecommunications," "telephonic services," or "telecommunications services." To ascertain the meaning of a city ordinance, we utilize the same rules of construction applied to statutes. Neske v. City of St. Louis, 218 S.W.3d 417, 424 (Mo. 2007) (en banc). "The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." Missouri ex rel. Young v. Wood, No. SC 88840, 2008 WL 2346199, at *1 (Mo. 2008) (en banc). The standard for determining whether a statute's terms are plain and clear is whether the terms are plain and clear to a person of ordinary intelligence. Wolff Shoe Co. v. Dir. of Revenue, 762 S.W.2d 29, 31 (Mo. 1988) (en banc). "When the statute's language is unambiguous, a court must give effect to the legislature's chosen language." Missouri ex rel. Young, 2008 WL 2346199, at *1. In the absence of statutory definitions, we turn to the ordinary meaning of the statutory terms as derived from a dictionary and consider the context of the statute in

which the language appears.  <u>Missouri ex rel. Burns v. Whittington</u>, 219 S.W.3d 224, 225 (Mo. 2007) (en banc).  In so doing, we presume that the legislature did not intend the statute to create an absurd result.  <u>Weeks v. Missouri</u>, 140 S.W.3d 39, 47 (Mo. 2004) (en banc).

The Springfield Code does not explicitly define the term "telephone."  The use of the term throughout the Code, however, provides some insight into its intended meaning.  <u>See</u> <u>Crum v. Vincent</u>, 493 F.3d 988, 996 (8th Cir. 2007) (Missouri law requires courts to read statutes *in pari materia* by harmonizing sections covering the same subject matter).  Several sections list the information that must be provided to apply for a franchise or license.  <u>See, e.g.</u>, Springfield, Mo., Code §§ 70-323(a), 70-594(b), 100-5.1.  Among the information required is the applicant's "telephone number."  Certainly the request for a telephone number in this context is not limited to the individual's land-line telephone, for a cell phone number would satisfy the purpose of these sections and it is unlikely an application would be denied on the basis that the applicant had a cell phone but not a land-line telephone.  Additionally, section 78-62 describes the criminal offense of "Harassment by telephone."  Surely this section is not limited to callers who harass others via a land-line telephone.  <u>See also</u> Springfield, Mo., Code § 120-152(f)(1) (to report a potential problem regarding a discharge, "it is the responsibility of the industrial user to immediately telephone and notify the POTW of the incident").

It is also true that some provisions in the Springfield Code refer to telephones and their accompanying wires or cables.  For instance, section 98-46(b) specifies the proper placement of "underground telephone cables, junction boxes and appurtenances thereto."  <u>See also</u> Springfield, Mo., Code §§ 70-481, 70-482.  It does not necessarily follow, however, that because some telephones have wires or cables, certain aspects of which are regulated by Springfield, those devices that do not have wires or cables are not telephones.

The word "telephonic" appears in only two Articles of the Code. Once in Article XI, which contains the tax ordinance at issue in this case, and secondly in Article V related to underground facility safety and damage prevention. Neither use suggests that the definition of the term is limited to land-line telephones.

Because the Springfield Code does not explicitly define the terms "telephone" or "telephonic services," we also look to the dictionary definition of these statutory terms to determine their ordinary meanings. See Schumacher v. Cargill Meat Solutions Corp, 515 F.3d 867, 871 (8th Cir. 2008) (looking to Merriam-Webster's Collegiate Dictionary for the ordinary meaning of a statutory term). The district court analyzed definitions from older dictionaries to determine the meaning of the word "telephone" during the time when the original tax ordinance was in effect. See City of Jefferson V, No. 04-04099 (W.D. Mo. July 3, 2007). The district court looked to the 1969 and 1982 editions of the American Heritage Dictionary, which both define a "telephone" as "[a]n instrument that directly modulates carrier waves with voice or other acoustic source signals to be transmitted to remote locations and that directly reconverts received waves into audible signals; especially such an instrument connected to others by wire." The 1966 Webster's Third New International Dictionary defines "telephone" as "an instrument for reproducing sounds esp. articulate speech at a distance." The district court also looked at the 2000 edition of the American Heritage Dictionary, which defines "telephone" as "[a]n instrument that converts voice and other sound signals into a form that can be transmitted to remote locations and that receives and reconverts waves into sound signals." Although the district court noted that these definitions provide examples of telephones that use wires, the examples are not exhaustive and do not preclude the conclusion that a device that meets the definition of telephone but which does not have wires is nonetheless a telephone. Accordingly, we also believe the following definition of "telephone" is especially helpful: "any of various devices (as a sound-signaling device or a speaking tube) resembling or suggesting the telephone." Webster's Third New International Dictionary 2350 (1981).

The 1999 edition of Merriam-Webster's Collegiate Dictionary defines "telephonic" as "of, relating to, or conveyed by a telephone." Webster's Collegiate Dictionary 1211 (10th ed. 1999). The definition of "telephonic" in other dictionaries is substantially the same. Webster's Third New International Dictionary, for instance, defines "telephonic" as "conveying sound to a distance," or "of or relating to the telephone," or "carried or conveyed by telephone." Webster's Third New International Dictionary 2350 (1981).

Applying Missouri's rules of statutory construction, we conclude that the plain language of the tax ordinance makes it clear that the ordinance was intended to cover all telephonic services, regardless of the type of technology used to provide the services. Cell phones are commonly described as telephones and are used to accomplish the same function and purpose as a land-line telephone.[12] Both devices convert voice and other sound signals into a form that can be transmitted to remote locations, both devices receive and reconvert waves into sound signals, and a cell phone resembles a telephone.

Admittedly, cell phones have newer and more advanced features than the telephones commonly used when the tax ordinance was first enacted. Nevertheless, nothing about the term "telephonic" in the tax ordinance is limited to the technology generally used to operate telephones in 1944. In fact, cases dating back to pre-1944 which discuss telephones and telephone systems describe them in terms of their purpose and not with regard to the type of technology used to operate them. See Gilpin v. Savage, 112 N.Y.S. 802, 805 (N.Y. Sup. 1908), *rev'd on other grounds*, 94 N.E. 656 (N.Y. 1911) ("The telephone is simply an instrument by which two persons may talk directly to each other."); see also Missouri ex rel. Baltimore & Ohio Tele.

_____

[12]The Oxford English Dictionary defines a cell phone as a type of telephone. Oxford English Dictionary Additions Series OED Online (1993), available at http://dictionary.oed.com (defining "cellphone" as "[a] hand-held or mobile radio-telephone providing access to a cellular radio network; a cellular telephone").

Co. v. Bell Tele. Co., 23 F. 539, 541 (C.C.E.D. Mo. 1885) ("A telephonic system is simply a system for the transmission of intelligence and news."). As the district court noted, there have been many advances in telephone technology over the past sixty years, and with each technological advancement we continue to refer to the product and services as telephonic. See City of Jefferson V, No. 04-04099 (W.D. Mo. July 3, 2007). Springfield is not required to update its Code for the purpose of recognizing the advent of each new form of technology used to provide telephonic services. Accordingly, we conclude that the language of the tax ordinance is unambiguous and that the tax ordinance applies to cell phone services.

## B. Extrinsic Evidence

Even if we believed the tax ordinance was ambiguous, however, we would conclude that extrinsic evidence supports the conclusion that Springfield intended the original language of the ordinance to cover services such as cell phone services, that the ordinary meaning of the term "telephone" includes cell phones, and that cell phone services are telephonic services.

The defendants describe their products as telephones and their services as telephonic services. See City of St. Louis v. Miss. River Fuel Corp., 57 F. Supp. 549, 554 (E.D. Mo. 1944) (terminology related to a particular industry should be given the meaning attributed to it by the industry). Cingular's website states that "[t]he world of wireless can be confusing. That's why we've provided this extensive glossary of terms to help you better understand the technologies behind wireless communications." The website's glossary defines "telephony" as "[o]riginally meaning voice (analog) communication by telephone (land line), this term has come to encompass virtually all telecommunications, because virtually all telecommunications can be done over or while connected to a telephone line." "Cellular" is defined as "[a] wireless telephone network that connects radio frequencies from a mobile phone to a system of multiple cell sites, each consisting of

an antenna and a base station, to a mobile telephone switching office, and ultimately to the public wireline telephone system." CMRS is defined as "[a]n FCC designation for any carrier or licensee whose wireless network is connected to the public switched telephone network and/or is operated for profit." Telecommunications is defined as "[c]ommunicating by telephone, telegraph or radio technology." These definitions do not indicate that telephonic services and telecommunications services are mutually exclusive. On the contrary, they support the conclusion that a cell phone, despite the fact that it is using a different technology than land-line telephones to accomplish the same purpose, is inherently telephonic in nature and should be subject to the same taxes as traditional land-line telephones regardless of what new terminology the defendants wish to use to describe their products and services in the course of this litigation. See Rhodes v. City of Hartford, 513 A.2d 124, 126 (Conn. 1986) ("[o]ne should not be able to avoid a tax on shoes by calling shoes slippers" (alteration in original) (internal quotation omitted)).

Although there is no case law specifically addressing Springfield's tax ordinance, the Missouri courts have recently discussed issues related to the question before us today. In City of Sunset Hills v. Sw. Bell Mobile Sys., Inc., the Missouri Court of Appeals concluded that Southwestern Bell, a provider of cellular communication services, is a telephone company for purposes of the Sunset Hills' Charter authorizing it to tax telephone companies. 14 S.W.3d 54, 58-59 (Mo. Ct. App. 1999) (Southwestern Bell described its cell phone business as "telecommunications antennae business"). Thereafter, in City of Springfield v. Sprint Spectrum, L.P., the Missouri Supreme Court characterized the holding in City of Sunset Hills as stating that it is "absurd to deny that companies providing 'wireless communications services' were a part of the class of 'telephone companies' subject to a telephone business license fee." 203 S.W.3d 177, 187 n.13 (Mo. 2006) (en banc). Additionally, in other cases, Missouri courts have discussed cell phone companies and the services they provide in terms of telephones and telephonic services. See, e.g., Missouri v. Purl, 236 S.W.3d 680, 682 (Mo. Ct. App. 2007) (describing a call on a "cellular phone" as

a "telephone call"); Auto-Owners Ins. Co. v. Ennulat, 231 S.W.3d 297, 300 (Mo. Ct. App. 2007) (discussing a "cellular telephone tower"); Whitney v. Alltel Commc'ns, Inc., 173 S.W.3d 300, 304, 312 (Mo. Ct. App. 2005) (describing a customer of Alltel's as a "wireless telephone customer" and citing Powertel, Inc. v. Bexley, 743 So.2d 570, 572 (Fla. Dist. Ct. App. 1999), wherein a person purchased a "cellular telephone service plan" allowing them to make "telephone calls" within the local service area). These cases lead us to the conclusion that if presented with the question before us, the Missouri Supreme Court would conclude that a cell phone is a telephone and that cell phone services are telephonic services.

Cases from other jurisdictions also support the conclusion that the ordinary definition of "telephone" includes cell phones and that a cell phone company is a telephone company. See Sw. Bell Mobile Sys., Inc. v. Ark. Pub. Serv. Comm'n, 40 S.W.3d 838, 842 (Ark. Ct. App. 2001) (concluding that CMRS providers are telephone companies because they "use their assets to provide a service whereby persons who are at some distance from each other may communicate by voice in real time"); Calloway v. Alltel Commc'ns, Inc., No. C99-2097, 2001 WL 34149071, at *1 (N.D. Iowa 2001) ("Alltel is a communications-related corporation which includes the sale of wireless telephone service and equipment."); Cent. Ky. Cellular Tel. Co. v. Commonwealth of Ky., 897 S.W.2d 601, 603 (Ky. Ct. App. 1995) ("The fact that the [cellular telephone companies] operate with technology that did not exist when the statute was adopted does not mean that they are not to be included for the purposes of [the statute]. . . . This fact does not mean that telephone companies become something else simply because they use improved communication techniques."); Nebraska v. Robinson, 724 N.W.2d 35, 62 (Neb. 2006) (describing Alltel's record keeping process for "wireless telephones"); Airtouch Comm'ns, Inc. v. Dep't of Revenue, State of Wyo., 76 P.3d 342, 349 (Wyo. 2003) (concluding that cellular companies are telephone companies because, "[t]o most reasonable people, Petitioners' business is indistinguishable from that of a telephone company. In fact, in today's society, many

people use telephone services and cellular services interchangeably" (internal quotation omitted)).

The cases cited by the defendants in which cell phone companies have been found to be something other than telephone companies are distinguishable. For example, Alltel's citation to an order from the Administrative Law Court in South Carolina for the proposition that Alltel is not a "telephone company" is not instructive. See Alltel Commc'ns, Inc. v. S.C. Dep't of Revenue, Nos. 07-ALJ-17-0299-CC through 07-ALJ-17-0304-CC (Apr. 22, 2008) (order granting Petitioners' motion for summary judgment). In that case, the parties stipulated that "[t]elephones and telephone companies transmit intelligence over a vast network of wires located in public rights of way and in easements over private property." Id. at 10, ¶ 50. The parties also stipulated that Alltel did not have any facilities located in public rights of way. Id. at 10, ¶ 51. As a result, the court's conclusion that Alltel did not meet the definition of a telephone company does not compel a similar conclusion in the present case because that definition is of no binding effect here. The citation to a Missouri Administrative Hearing Commission decision from 1982 is also unhelpful. See Mobile Radio Commc'ns, Inc. v. Dir. of Revenue, No. RS-79-0199, 1982 WL 12037 (Mo. Admin. Hrg. Com. Dec. 16, 1982). In Mobile Radio Commc'ns, the administrative commission relied on a Texas Supreme Court case in which mobile radio communications were not subject to a local ordinance because the ordinance referred to transmission of voice communication "by lines and wires." Id. Because our analysis of whether the defendants are subject to the Springfield tax ordinance does not include stipulated definitions for telephone company or telephonic services, the cases cited by the defendants are inapposite.

Likewise, Cingular's citation to a Massachusetts case does not further its position. See Bell Atl. Mobile of Mass. Corp., Ltd. v. Comm'r of Revenue, 884 N.E.2d 978 (Mass. 2008). The case is interesting, however, because Bell Atlantic Mobile took the position that it provided telephone services and was therefore a

telephone company for purposes of receiving a property tax exemption.  See Id. at 984; Bell Atl. Mobile of Mass. Corp., Ltd. v. Comm'r of Revenue, No. C269569, 2007 WL 597941 at *14 (Mass. App. Tax. Bd. 2007) (Bell Atlantic defined "telephone service" as "two-way, party-to-party voice communication and data transmission").  The court reached its conclusion that Bell Atlantic Mobile was not a telephone company after considering the fact that it owned virtually none of the property eligible for the property tax exemption.  Bell Atl. Mobile, 884 N.E.2d at 983-84.  The court quickly dismissed one of its prior cases addressing the issue of whether a company that provided land-line telephone services, cable television, and Internet services, qualified as a telephone company for purposes of the property tax exemption.  See 884 N.E.2d at 984 (discussing RCN-BecoCom, LLC v. Comm'r of Revenue, 820 N.E.2d 208 (Mass. 2005)).  Interestingly, in RCN-BecoCom, the court included dial-up Internet connections in the calculation of the financial receipts the company received from telephone service.  820 N.E.2d at 215, 216 n.4.  In so doing, the court reasoned that dial-up Internet service is analogous to the transmission of information by facsimile, which is a telephone service.  Id.  The court also noted that Digital Subscriber Line (DSL) Internet access was a telephone service, thus providing further support for our conclusion that the definition of telephones and telephonic services is indeed broad and is not limited to any particular type of technology.

We acknowledge that tax ordinances are to be strictly construed and that if there is any doubt about the applicability of the tax, it must be resolved in favor of the taxpayer.  See Morton v. Brenner, 842 S.W.2d 538, 542 (Mo. 1992) (en banc); Armack's Estate v. Missouri, 561 S.W.2d 109, 111 (Mo. 1978) (en banc).  Nevertheless, even if we apply the strictest of definitions to "telephones" and "telephonic services," we conclude that the extrinsic evidence leaves no doubt that the phrase "telephonic services" covers cell phone services.

Alltel contends that the appropriate standard is not whether "telephonic services" is broad enough to cover CMRS but whether reasonable minds can differ on

the question of whether CMRS constitutes telephonic services. Springfield's authority to tax "telephones" and "telephonic services" is not at issue, however, and we conclude that the application of the tax to the defendants is clear. The fact that Alltel can present an argument that the ordinance is susceptible to more than one interpretation does not mean that the ordinance is ambiguous. See J.B. Vending Co., Inc. v. Dir. of revenue, 54 S.W.3d 183, 188 (Mo. 2001) (en banc) ("the mere fact that the litigants disagree over the meaning of 'public' does not render the statute ambiguous"). That courts in other jurisdictions, applying different statutory terms and definitions to different facts, have at times concluded that a particular business is not a telephone company does not alter our conclusion, for we find the Missouri Court of Appeals' 1999 holding that a cell phone provider could be taxed as a telephone company to be more compelling. See City of Sunset Hills, 14 S.W.3d at 58-59. Because we must assume that the Springfield City Council was aware of this case law when it modified the tax ordinance in 2000, we conclude that if the Council had intended that cell phone services be excluded from the tax on telephonic services, it would have made that intention clear in 2000. See Hudson v. Dir. of Revenue, State of Mo., 216 S.W.3d 216, 222-23 (Mo. Ct. App. 2007) ("The legislature is presumed to know the existing case law when it enacts a statute." (internal quotation omitted)). Thus, even if we assume that the tax ordinance is ambiguous and look to extrinsic evidence interpreting it, we conclude that the legislative intent to tax "telephonic services" makes the ordinance applicable to cell phone services.

## C. The 2000 Recodification of the Springfield Code

The defendants argue that the 2000 modification of the tax ordinance must be given some effect. Cingular contends that it provides "telecommunications" services and that the definitions of telephonic services and telecommunications services are mutually exclusive. Furthermore, both defendants argue that they are not subject to the tax under the telecommunications language in the ordinance because Springfield's Charter authorized it to tax only telephone companies, and not telecommunications

companies, and the 2000 modification of the ordinance violated the Hancock Amendment.

When the legislature amends a statute, we presume its intent was to change the existing law or to accomplish some legislative purpose. Hagan v. Dir. of Revenue, 968 S.W.2d 704, 706 (Mo. 1998) (en banc); Missouri v. Rousseau, 34 S.W.3d 254, 261 (Mo Ct. App. 2000). The legislative purpose of a statutory amendment can be to clarify the law rather than change the existing law. Andresen v. Bd. of Regents of Mo. W. State Coll., 58 S.W.3d 581, 589 (Mo. Ct. App. 2001) (concluding that the amendment clarified the legislature's original intent to exclude academic institutions from the State Personnel Law); Flipps Nine, Inc. v. Mo. Prop. and Cas. Ins. Guar. Ass'n, 941 S.W.2d 564, 568 (Mo. Ct. App. 1997) (concluding that the amendment to the statute was intended to clarify and particularize existing law); Carter v. Pottenger, 888 S.W.2d 710, 714 (Mo. Ct. App. 1994) (concluding that the amendment indicated legislative intent that "personal representative" under the earlier version of the statute did not mean "a representative of a probate estate appointed under the time constraints" of another statute). We consider the legislative act in its entirety and harmonize all of its provisions if possible. Hagan, 968 S.W.2d at 706. If the legislature amends only part of a statute, we presume that the unamended and unchanged parts of the statute are intended to remain operative and effective. Citizens Bank and Trust Co. v. Dir. of Revenue, State of Mo., 639 S.W.2d 833, 835 (Mo. 1982).

The Code contains several references to "telecommunications" and "telecommunications services." Section 100-2.43 defines "telecommunications" as "the transmission, between or among points specified by the user, of information of the user's choosing (e.g. data, video, and voice), without change in the form or content of the information sent and received regardless of the technology used." See also The Telecommunications Act of 1996, 47 U.S.C. § 153(43) (using substantially the same definition).

The 1999 edition of Merriam-Webster's Collegiate Dictionary defines "telecommunication" as "communication at a distance (as by telephone)." Merriam-Webster's Collegiate Dictionary 1211 (10th ed. 1999). "Telecommunication" has also been defined as "communication at a distance (as by cable, radio, telegraph, telephone, or television)." Webster's Third New International Dictionary 2349 (1981).

Given these definitions, we conclude that cell phone services could be considered both telephonic services and telecommunications services. Cell phones are telephonic, as discussed above. Cell phones may also be telecommunications devices under the definition in the Springfield Code and the ordinary definition of the term because they transmit information, including voice, data, and in the case of some newer cell phones, video. Thus, the terms used in the tax ordinance are not necessarily mutually exclusive and there is no merit to the argument that cell phones are telecommunications devices and therefore cannot be taxed as telephonic devices.

This bring us to Cingular's argument that the 2000 modification must have had some purpose, to which we must give effect. See Schoemehl v. Treasurer of Mo., 217 S.W.3d 900, 902 (Mo. 2007) (en banc) (noting that an entire clause of a statute should not be considered excess verbiage). We conclude that the legislative intent of the 2000 recodification that added the terms "telecommunications" and "telecommunications services" was to clarify the scope of the tax ordinance, making it clear that cell phone services are telephonic services subject to the tax, and not to expand the scope of the ordinance. See Missouri ex rel. Thomas v. Kelly, 631 S.W.2d 685, 688 (Mo. Ct. App. 1982) (when a new act supersedes an old law for the purpose of repealing conflicting or inconsistent provisions, any variation in the terminology in the new law is not as meaningful for the purpose of showing legislative intent to change the effect of the statute).

The record indicates that Springfield's recodification of § 70-452 in 2000 was not intended to be a substantive change to the scope of the ordinance. The

modification occurred as part of a complete update of the Springfield Code, the purpose of which was to create an electronically searchable version thereof, eliminate inconsistences or unclear provisions of the Code, and to identify ordinances of questionable enforceability, expired language, duplications and conflicts with state or federal law. The modification process was conducted by a private company and was specifically intended to create "non-substantive" changes in the Code unless needed to be internally consistent or consistent with state or federal law. Mary Mannix, Springfield's Assistant Director of Finance and Comptroller, testified in her deposition that "We viewed [the recodification] as a modernization of the language." She testified further that "Anything that was a substantial change to what the ordinances that existed at the time that this was codified would have been covered by a separate city council ordinance at that time." Nancy Yendes, a Springfield city attorney, testified that the tax ordinance was not brought before the Council separately and that no one working for Springfield was aware of the updated language in the tax ordinance until after the Council approved the recodification of the entire Code. In sum, this evidence reveals that the modification of the tax ordinance was not intended to be, and was not viewed as, a substantive change to the scope of the ordinance.

The record also indicates that prior to the 2000 modification, Springfield interpreted the tax ordinance as applying to cell phone services. The original ordinance, enacted in 1944, included the phrase "telephonic services," a phrase that, despite Cingular's argument to the contrary, is broader than the term "telephone." As indicated by the definitions of these terms analyzed above, "telephonic" means something that is related to a telephone, which necessarily includes items or services that are not the physical telephone itself. The record also indicates that Springfield interpreted the tax ordinance to apply to cell phones before 2000. Yendes testified that she believed the term "telephonic" is broader than "telecommunications," and that the new language in the tax ordinance was only included to update the ordinance with

the new phraseology and clarify the scope of the ordinance.[13]  Yendes also testified that she had discussions with cell phone companies, including Alltel, in the mid-to-late 90s regarding their need to comply with the tax ordinance.  The fact that Springfield did not send the cell phone companies a demand letter prior to 2004 does not establish that Springfield believed that the ordinance did not apply to the defendants and, in any event, does not relieve the defendants of their obligation to pay the tax.  See Med. House, Inc. v. Dir. of Revenue, 799 S.W.2d 80, 82-83 (Mo. 1990) (en banc).  Thus, we conclude that the original scope of the ordinance included cell phones, and that the legislative purpose of the 2000 modification was to clarify this interpretation and not to expand the scope of the ordinance.

The defendants argue that because Springfield referred to them as telecommunications companies in the original pleadings, it cannot succeed in taxing them under the original language of the ordinance.  Springfield's pleadings do not, however, change the scope of the question before us.  Springfield has always asserted its authority to tax the defendants as telephone companies.  Furthermore, Count III of the Complaint seeks a declaratory judgment that "the Springfield Ordinance, which includes the terms 'telephone' and 'telephonic' applies to the Wireless Defendants' services;" and that "the Wireless Defendants [are] liable to pay taxes under the Ordinance."  Springfield's motion for summary judgment clearly argued that CMRS is subject to taxes applicable to telephones and telephonic services.  Additionally, the record indicates that the district court and the parties treated the declaratory judgment as an issue of whether the defendants provide telephones and telephonic services.

The defendants also argue that Springfield's attempt to tax them exceeds the scope of Springfield's Charter.  Section 18.1(3) of Springfield's Charter authorizes it

---

[13]Yendes testified that one way in which the 2000 modification clarified the ordinance was to draw peoples' attention to the ordinance regardless of whether they searched the Springfield Code for provisions related to telephones, telephonic services, telecommunications, or telecommunications services.

to tax telephone companies. A company that provides telephones and telephonic services is a telephone company. Thus, a tax on the defendant's cell phone services, which are telephonic services, is authorized by the Charter. We need not reach the question whether the City's Charter grants it the authority to tax telecommunications companies, but we note that Springfield has the authority to tax a business and occupation that, although not specifically listed as subject to a license tax, "clearly comes within the definition and meaning of the enumerated subjects or is in fact a genus of one of the named occupations." See City of St. Charles v. St. Charles Gas Co., 185 S.W.2d 797, 798 (Mo. 1945). Whether a telecommunications company clearly comes within the definition of, or is a genus of, a telephone company is a question we leave for another day.

The defendants' final argument is that the 2000 recodification of the tax ordinance violated the Hancock Amendment to the Missouri Constitution, with the result that they cannot be taxed under the language added in 2000 or under the original language of the ordinance. See Mo. Const. art. X, § 22(a). Because we are not applying the language of the ordinance that was added in 2000 to the facts of this case, we do not need to reach the question whether the 2000 recodification violated the Hancock Amendment.[14] Even if the language added in 2000 was unconstitutional, a question we do not decide, we see no reason why the original language of the ordinance cannot be severed. See Mo. Ann. Stat. § 1.140 (allowing unconstitutional language to be severed from a statute unless "the valid provisions of the statute are so essentially and inseparably connected with, and so dependant upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent"). The 2000 modification merely added language to the ordinance

---

[14] We do note, however, that the Hancock Amendment provides for a reduction in the levy of a tax if the tax base is broadened without voter approval; it does not result in the abolition of the tax altogether. Mo. Const. art. X, § 22(a).

and did not affect the validity of the original decades-old language.[15]  See Mo. Ass'n of Club Executives v. Missouri, 208 S.W.3d 885, 888-89 (Mo. 2006) (en banc) (challenged provisions could be severed); Weinschenk v. Missouri, 203 S.W.3d 201, 219-21 (Mo. 2006) (en banc) (provisions were not severable).  Therefore, even if the language added to the ordinance in 2000 was unconstitutional, because the defendants provide telephones and telephonic services within Springfield, they are subject to the tax ordinance.

The judgment is affirmed.

_____

---

[15]The language enacted in 1944 was "telephones and telephonic services."  In 1968, the Code was updated and the "s" on "telephones" was omitted.  It is unclear whether this change was intentional, but in any event, the parties have not argued that this change affects the issue before us today.